UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARIO NAVARIJO-ORANTES,

               Petitioner,

      v.                                   19-CV-790
                                               DECISION AND ORDER

WILLIAM BARR, Attorney General;
THOMAS FEELEY, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and
Customs Enforcement; and JEFFREY
SEARLS, Facility Acting Director, Buffalo
Federal Detention Facility,

               Respondents.

_____


        Mario Navarijo-Orantes is a citizen of Guatemala who is detained while he awaits

judicial review of his application for withholding of removal.  He has been in federal

immigration detention for over a year.  On June 14, 2019, Navarijo-Orantes filed a pro

se petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity

of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York,

Docket Item 1; on August 5, 2019, the government responded, Docket Items 3 and 4;

and on August 19, 2019, Navarijo-Orantes replied, Docket Item 7.

        For the reasons that follow, the Court grants in part and denies in part Navarijo-

Orantes's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS").

On April 1, 1991, Navarijo-Orantes was detained by the former Immigration and Naturalization Service ("INS") after he attempted to enter the United States in Miami, Florida, with a fraudulent visa. Docket Item 3-3 at 11. He was placed into deportation proceedings. *Id.* On July 1, 1991, an immigration judge ("IJ") denied Navarijo-Orantes's applications for asylum and withholding of removal and ordered him removed to Guatemala. *Id.* The Board of Immigration Appeals ("BIA") affirmed the IJ's order and dismissed Navarijo-Orantes's appeal. *Id.* Navarijo-Orantes was removed from the United States on November 27, 1991. *Id.*

On July 21, 1999, Navarijo-Orantes was apprehended by a United States Border Patrol Officer after he illegally entered the United States at the Mexican border near Brownsville, Texas. *Id.* at 12. INS reinstated Navarijo-Orantes's prior removal order, and he again was removed from the United States on October 15, 1999. *Id.* He was also prohibited from re-entering the United States for a period of twenty years. Docket Item 3-2 at 25.

In early 2018, Navarijo-Orantes sought asylum in Canada. *Id.* at 29. He was denied relief and appealed. *Id.* On June 6, 2018, Navarijo-Orantes was apprehended by a United States Border Patrol Officer after he illegally entered the United States at the Canadian border near Rouses Point, New York. Docket Item 3-3 at 12. DHS served him with a "Notice of Intent / Decision to Reinstate Prior Order [of Removal]." *Id.*

He was detained pending criminal prosecution for his illegal reentry into the United States. *Id.*

On August 22, 2018, Navarijo-Orantes pleaded guilty in the United States District Court for the Northern District of New York to violating 18 U.S.C. § 1326(a). Docket Item 3-3 at 1. He was sentenced to time served on October 17, 2018. *Id.* at 2. That same day, he was transferred to DHS custody. *Id.* at 12.

Two days later, Navarijo-Orantes "expressed a reasonable fear of return to Guatemala and [his] case was referred to U.S. Citizenship and Immigration Services [("USCIS")] for a reasonable fear determination." *Id.* On November 19, 2018, USCIS concluded that Navarijo-Orantes had established a reasonable fear of returning to Guatemala and referred his case to an IJ for "withholding only proceedings."[1] *Id.* On November 21, 2018, DHS determined that Navarijo-Orantes would be detained pending the final administrative determination of his immigration case. *Id.* at 7.

On January 17, 2019, Navarijo-Orantes applied for withholding of removal. *Id.* at 21. DHS reviewed Navarijo-Orantes's custody status and, on February 5, 2019, DHS

---

[1] When the government reinstates a prior removal order, the alien is ineligible to challenge the prior order. *See Garcia-Villeda v. Mukasey*, 531 F.3d 141, 150 (2d Cir. 2008) ("[W]hile aliens have a right to fair procedures, they have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully reentering the country." (quoting *Morales–Izquierdo v. Gonzales,* 486 F.3d 484, 498 (9th Cir.2007) (en banc))). The only relief an alien in that situation can pursue is withholding or deferral of removal. *See* 8 C.F.R. § 1208.2(c)(2); *see also id.* § 1208.2(c)(3)(i) ("The scope of review in proceedings conducted pursuant to paragraph (c)(2) of this section shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal. During such proceedings, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief.").

decided to continue Navarijo-Orantes's detention because it found him to be a flight risk. *Id.* at 11-13.

On March 5, 2019, an IJ conducted a bond hearing. *Id.* at 15. The IJ found Navarijo-Orantes to be a flight risk and denied his request for a change in custody. *Id.* Navarijo-Orantes was given a further custody review, including an in-person interview, in April 2019. *Id.* at 32-33. On April 18, 2019, DHS again decided to continue his detention. *Id.* at 34.

On April 19, 2019, an IJ denied Navarijo-Orantes's application for withholding of removal, and his removal order was reinstated. *Id.* at 21-31. Navarijo-Orantes appealed the IJ's decision to the BIA, and that appeal is currently pending. Docket Item 3-1 ¶ 36.

Navarijo-Orantes remains detained at the BFDF. *Id.* ¶ 39.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Navarijo-Orantes is validly detained under 8 U.S.C. § 1226(a). Docket Item 3 at 1. Navarijo-Orantes makes three arguments to the contrary. First, he argues that his continued detention violates his right to due process under the Fifth Amendment. Docket Item 1 at 8-9. Second, he argues that his right to due process entitles him to another bond hearing at which the government must establish by clear and convincing evidence that he presents a risk of flight or danger. *Id.* at 8. Finally, he argues that the "government's categorical denial of

bail to certain non[-]citizens violates the right to bail encompassed by the Eighth Amendment." *Id.*

Because Navarijo-Orantes is proceeding pro se, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I.    DUE PROCESS CLAUSE

The Fifth Amendment's Due Process Clause forbids depriving any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyer v. Doe*, 457 U.S. 202, 210 (1982). At the same time, however, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (internal citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must

still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

The Due Process Clause is not offended by mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings." *Demore*, 538 U.S. at 513 (emphasis added). In *Demore*, the Supreme Court explicitly noted that "in the majority of cases [§ 1226(c) detention] lasts for less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Id.* at 529. Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the [IJ] to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." *Id.*

### A. Substantive Due Process

Navarijo-Orantes argues that his detention violates his right to substantive due process. Docket Item 1 at 8. He has been detained by DHS since October 17, 2018—more than a year.[2] Nevertheless, this Court cannot say that detention that long necessarily violates due process. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under § 1226 may serve the government's compelling interests in

---

[2] Navarijo-Orantes claims that "has been detained in immigration custody" since June 6, 2018. Docket Item 1 ¶ 2. As the respondents note, however, he was not transferred to *DHS* custody until after he was sentenced in the Northern District of New York on October 17, 2018. Docket Item 4 at 3. Thus, although he has been detained since June 6, 2018, he has been in immigration detention only since October 17, 2018; before that, he was in custody on the criminal charge.

both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749. What is more, Navarijo-Orantes's detention here has been prolonged primarily by the pending judicial review of his claims. *See Sanusi*, 100 F. App'x at 51. Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, that time has not yet come here. *See Salerno*, 481 U.S. at 747 n.4.

## B. Procedural Due Process

Navarijo-Orantes also challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at 8-9. "In light of the substantial uncertainty surrounding the detention provisions" in § 1226, *Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018), this Court has evaluated procedural due process challenges to immigration detention with a two-step inquiry, *see Hechavarria v. Sessions*, 2018 WL 5776421, at *5-*9 (W.D.N.Y. Nov. 2, 2018). As the first step, the Court considers whether the alien's detention has been unreasonably prolonged. *Id.* at *5-*7. If it has not, then there is no procedural due process violation.[3] *See Sankara v. Whitaker*, 2019 WL 266462, at *5 (W.D.N.Y. Jan. 18, 2019). But if it has, the Court proceeds to step two and "identif[ies] . . . the specific dictates of due process" by considering the factors

---

[3] This presumes, however, that the DHS has not "in an arbitrary or categorical manner, . . . den[ied] an alien access to the administrative processes in place to review continued detention." *Zadvydas v. Davis*, 533 U.S. 678, 724 (2001) (Kennedy, J., dissenting). In such a case, "habeas jurisdiction would lie to redress the due process violation caused by the denial of the mandated procedures." *Id.* Navarijo-Orantes makes no such argument.

noted in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see Hechavarria*, 2018 WL 5776421, at *7-*9.  If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process.  *See Hechavarria*, 2018 WL 5776421, at *9.

### 1.    Navarijo-Orantes's Unreasonably Prolonged Detention

"[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause," several factors determine whether detention is unreasonably prolonged.  *Jamal A. v. Whitaker*, 358 F. Supp. 3d. 853, 858-59 (D. Minn. 2019)).  "For example, this Court has considered '(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal.'"  *Joseph v. Barr*, 2019 WL 3842359, at *5 (W.D.N.Y. Aug. 15, 2019) (quoting *Hemans*, 2019 WL 955353, at *6).

First and most important, courts consider the length of detention.  *See Reid v. Donelan*, 2019 WL 2959085, at *9 (D. Mass. July 9, 2019) ("The total length of the detention is the most important factor.").  Although there is no bright-line rule in determining whether detention has become unreasonably prolonged, *see Hechavarria*, 2018 WL 5776421, at *5-*6, "courts become extremely wary" of concluding that detention is *not* unreasonably prolonged "[a]s detention continues past a year," *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018); *see also Reid*, 2019 WL 2959085, at *9-*10 (explaining that "detention is likely to be unreasonable if it lasts for

more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics," but "[t]his one-year period is not a bright line").

Navarijo-Orantes has been in DHS custody since October 17, 2018—more than one year and much longer than the four-month average period contemplated in *Demore*. *See* 538 U.S. at 529; *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 864 (2018) (Breyer, J., dissenting) (individuals with mental illness "dangerous to themselves or to others may be confined involuntarily . . . [with] the right to review the circumstances at least annually."). As this Court has noted, "courts have found detention shorter than a year to be unreasonably prolonged as part of a procedural due process analysis." *Fremont v. Barr*, 2019 WL 1471006, at *4 (W.D.N.Y. Apr. 3, 2019) (collecting cases). Because Navarijo-Orantes's detention has surpassed the one-year period by which time "detention is likely to be unreasonable," *Reid*, 2019 WL 2959085, at *9, this factor supports his argument that his detention without an individualized hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. "Whether 'the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention' factors into the reasonableness of [a petitioner's] detention." *Jamal A.,* 358 F. Supp. 3d at 860 (quoting *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (quoting *Muse*, 2018 WL 4466052, at *5).

Navarijo-Orantes states that "[t]he stress and anxiety that [he] faces at the [BFDF] *which is not different from other penal institutions of prison sentences like the*

*Clinton Jail* in which [he] was previously kept . . . , are amounting to be severe due to lengthy incarceration." Docket Item 7 at 12 (emphasis added). The respondents, on the other hand, have submitted an affidavit stating that "[p]ersons held at BFDF *generally* do not face the same level of restrictions typical for someone held at a prison." Docket Item 3-4 ¶ 7 (emphasis added). For example, the respondents say, "[a]t night, *most persons* held at BFDF are not locked in a cell, as would be typical in a prison." *Id.* ¶ 8 (emphasis added). But the affidavit does not specify whether *Navarijo-Orantes* is housed like "most persons" or what restrictions apply *to him.* What is more, the respondents' brief is silent regarding Navarijo-Orantes's conditions of confinement. *See* Docket Item 4.

Given the respondents' failure to specify the conditions of Navarijo-Orantes's confinement, the Court will credit Navarijo-Orantes's statement that those conditions are "not different from" the penal institution in which he had previously been housed. *See Jamal A.*, 358 F. Supp. 3d at 860 (finding that factor favored the petitioner where incarceration was "indistinguishable from penal confinement" (quoting *Muse*, 2018 WL 4466052, at *5)). Thus, this factor also favors a determination that Navarijo-Orantes's detention has been unreasonably prolonged.

Third, courts consider whether either side is responsible for delay. The Second Circuit has indicated that this factor weighs against finding detention unreasonably prolonged when an alien has "substantially prolonged his stay by abusing the processes provided to him," but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).

In this case, the respondents argue that Navarijo-Orantes "obtained multiple adjournments of his immigration merits hearing which resulted in the hearing moving from December 18, 2018 to April 18, 2019—a period of 122 days." Docket Item 4 at 11. This statement suggests that Navarijo-Orantes was responsible for the entire 122-day period. But a closer examination of the record tells a different story.

The respondents submitted an affidavit recounting the following events. "On December 18, 2018, Mr. Navarijo-Orantes appeared, with counsel, for a master calendar hearing and a bond hearing before an immigration judge located in Batavia, New York. The *master calendar hearing* was adjourned to March 5, 2019, to allow Mr. Navarijo-Orantes time to prepare and file an application for relief." Docket Item 3-5 ¶ 11 (emphasis added). "On January 17, 2019, Mr. Navarijo-Orantes filed an application for relief with the immigration court." *Id.* ¶ 13. "On March 5, 2019, Mr. Navarijo-Orantes appeared, with counsel, for a master calendar hearing and a bond hearing before an immigration judge. The *master calendar hearing* was adjourned to March 27, 2019 to an individual calendar hearing on the merits." *Id.* ¶ 14 (emphasis added). "The hearing scheduled on March 27, 2019 was adjourned to April 2, 2019 *for immigration judge reassignment.*" *Id.* ¶ 15 (emphasis added).

"On March 18, 2018, Mr. Navarijo-Orante's [sic] filed a motion for a continuance with the immigration court. The immigration judge granted that motion and the hearing scheduled for April 2, 2019 was adjourned to April 18, 2019." *Id.* ¶ 16. "On April 18, 2019, Mr. Navarijo-Orantes appeared, with counsel, for an individual calendar hearing before an immigration judge. At the conclusion of that hearing, the immigration judge denied Mr. Navarijo-Orantes's application for relief." *Id.* ¶ 19.

The first two adjournments—on December 18, 2018, and March 5, 2019—were of master calendar hearings, not individual merits hearings. *See De Ren Zhang v. Barr*, 767 F. App'x 101, 103 (2d Cir. 2019) (summary order) ("In the usual course of things, for removal proceedings held in immigration court, an IJ first holds one or more 'master calendar hearings,'" with several purposes, including "for the IJ to *set deadlines* for filing applications and submitting evidence and [to] *schedule hearings* to decide contested matters and applications for relief." (emphasis added) (citing U.S. Dep't of Justice, Office of the Chief Immigration Judge, Immigration Court Practice Manual, § 4.15 (2018))). "Although it is possible to resolve some uncontested cases through only a master calendar hearing, cases that do require evidentiary hearings typically also require one or more master calendar hearings in preparation for that individual hearing." *Id.* (citing Deborah E. Anker, Law of Asylum in the United States, App. A § A3:21 (2018)). Thus, the adjournments of the master calendar hearings were not delays caused by Navarijo-Orantes; they were part of the ordinary course of an immigration proceeding.

The first merits hearing in this case was scheduled for March 27, 2019. That hearing was adjourned until April 2 for the assignment of a different IJ—an event presumably beyond Navarijo-Orantes's control. Upon learning of the April 2 date, Navarijo-Orantes's attorney requested a short continuance due to a scheduling conflict. *See* Docket Item 3-3 at 17. Thus, with the exception of that final motion for an approximately two-week continuance, necessitated by the government's change in the schedule to assign a new IJ, it appears that the delays were due to the normal

administrative process—not to any action taken by Navarijo-Orantes. Consequently, the Court finds this factor to be neutral.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to weigh the merits of Navarijo-Orantes's claims pending before the BIA, which may be appealed from there to the Second Circuit. But even if this factor were to cut against Navarijo-Orantes, it would not change the Court's conclusion.

After weighing all the factors, and especially the length of detention, this Court finds that Navarijo-Orantes's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy, if any, that demands.

### 2. The Process Due to Navarijo-Orantes

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Navarijo-Orantes's continued detention without a robust hearing fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *Schall*, 467 U.S. at 263 (quoting *Breed*, 421 U.S. at 531).

Navarijo-Orantes's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Navarijo-Orantes has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, Navarijo-Orantes has strong ties to the United States. He has two children who are United States citizens and a third child who is a legal permanent resident. Docket Item 1 ¶ 20. He also has support from the broader community. *Id.* ¶ 21; *see also id.* at 57-65 (letters from friends and community members). Thus, the Court finds that Navarijo-Orantes has a substantial interest in release from detention *in the United States.*

This Court recognizes that the government's interest in detaining Navarijo-Orantes also may be strong. The government contends that Navarijo-Orantes's detention is justified because he presents a flight risk. Docket Item 3 ¶ 25. This Court agrees that such an interest may well be "legitimate and compelling." *Salerno*, 481 U.S. at 752.

Finally, this Court finds that there is a substantial risk of an erroneous deprivation of Navarijo-Orantes's liberty interests from the procedures used thus far. As this Court has noted before, "[w]hen the government seeks to detain a person to achieve a regulatory purpose, due process requires the government to demonstrate by clear and convincing evidence that detention necessarily serves a compelling interest." *Hemans*, 2019 WL 955353, at *8 (citing *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33); *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "'when the individual interests at stake

in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies equally in the context of immigration detention. *See Hechavarria*, 2018 WL 5776421, at *8 (collecting cases).

To sustain the prolonged detention of an alien subject to removal proceedings, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person,'" *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding. This requires consideration of less restrictive alternatives to detention. *See Hechavarria v. Whitaker*, 2019 WL 233887, at *10-*11 (W.D.N.Y. Jan. 16, 2019); *Hechavarria v. Sessions*, 2018 WL 5776421, at *9 n.13.

Turning to the procedures used thus far in this case, Navarijo-Orantes *did* receive an individualized custody hearing before an immigration judge on March 5, 2019. *See* Docket Item 3-3 at 15. The immigration judge declined to release Navarijo-Orantes because he found that Navarijo-Orantes was a flight risk. *Id.* But at that § 1226(a) hearing, the burden of proof presumably was on Navarijo-Orantes to demonstrate to the "satisfaction of the officer that [his] release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

Navarijo-Orantes's first hearing was insufficient because it was not a proceeding in which DHS bore the burden of proof by clear and convincing evidence or where a neutral decision maker even considered plausible, less-restrictive alternatives to

detention.  As this Court has explained, after an alien's detention has become unreasonably prolonged, "a 'typical' § 1226(a) bond hearing[ ]—where *he* must prove '*to the satisfaction of the immigration judge*' that he 'does not present a danger' before the immigration judge could even consider whether conditions of supervision might suffice to protect the public—is no longer constitutionally adequate." *Hechavarria v. Whitaker*, 2019 WL 233887, at *7 (emphasis in original) (quoting 8 C.F.R. § 236.1(c)(8)).

The respondents argue that even if Navarijo-Orantes were entitled to a bond hearing where the government bears the burden of proof, he has failed to show any prejudice resulting from the failure to conduct such a hearing.  Specifically, the respondents contend that Navarijo-Orantes has failed to show that placing the burden of proof on the government would have made any difference in the IJ's determination that he was a flight risk.  Docket Item 4 at 15-16.  But even if that ipse dixit argument were true, it does not address the IJ's obligation to consider less-restrictive alternatives to detention.  So even assuming, for the sake of argument, that the respondents are correct that the government could have proven by clear and convincing evidence that Navarijo-Orantes posed some flight risk, there is no indication that such a risk could not have been mitigated by alternatives to detention.

Because Navarijo-Orantes's detention has been unreasonably prolonged, and because § 1226(a) does not require the government to demonstrate by clear and convincing evidence that his detention necessarily serves a compelling regulatory purpose, the statute is unconstitutional as applied to him.  His continued detention violates the Due Process Clause.  Navarijo-Orantes therefore must be released unless, no later than fourteen days from the date of this decision, the government demonstrates

by clear and convincing evidence before a neutral decision maker that Navarijo-Orantes's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight. The decision maker must consider—and must address in any decision—whether there is clear and convincing evidence that no less-restrictive alternative to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, would also reasonably address those purposes. *See Hechavarria v. Whitaker*, 2019 WL 233887, at *10; *Hechavarria v. Sessions*, 2018 WL 5776421, at *8-*9. Because Navarijo-Orantes has indicated an interest in a "supervised release" program, including the possibility of electronic monitoring, Docket Item 7 at 13, the decision maker must expressly consider whether there is clear and convincing evidence that this plausible, less-restrictive alternative to detention would not reasonably serve the government's interests in lieu of detention.

## II.    EXCESSIVE BAIL CLAUSE

Navarijo-Orantes also argues that the "government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment." Docket Item 1 at 8-9. The Excessive Bail Clause requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754. Although detention of criminal aliens during removal proceedings for only a brief period without individualized findings after a hearing is not "excessive in relation to the valid interests the government seeks to achieve," *Sankara v. Barr*, 2019 WL 1922069, at *9 (W.D.N.Y. Apr. 30, 2019) (quoting *Galen v. Cty of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)); *see Demore*, 538 U.S. at 519-21 (explaining Congress's interests in brief mandatory § 1226(c) detention), the same

cannot necessarily be said "after unusual delay in deportation hearings," *Carlson v. Landon*, 342 U.S. 524, 546 (1952). But because this Court has determined that due process requires that Navarijo-Orantes receive an individualized hearing, his claim that the Excessive Bail Clause requires the same result is moot. *See Kabba v. Barr*, 2019 WL 3974135, at *7 (W.D.N.Y. Aug. 22, 2019).

## CONCLUSION

For the reasons stated above, Navarijo-Orantes's petition, Docket Item 1, is GRANTED IN PART AND DENIED IN PART. **Within fourteen days of the date of this decision and order**, the government must release Navarijo-Orantes from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Navarijo-Orantes's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests. In other words, Navarijo-Orantes must be released unless a neutral decision maker finds by clear and convincing evidence that no condition or

combination of conditions of release can reasonably assure Navarijo-Orantes's

appearance and the safety of the community or any persons.

      SO ORDERED.


Dated:      November 6, 2019
              Buffalo, New York


                          ***s/ Lawrence J. Vilardo***
                          LAWRENCE J. VILARDO
                          UNITED STATES DISTRICT JUDGE